# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**PEACH STATE LABS, INC.**

        **Plaintiff,**

**-vs-**                                                                 **Case No. 6:09-cv-395-Orl-28DAB**

**ENVIRONMENTAL MANUFACTURING
SOLUTIONS, LLC**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION TO STAY ENFORCEMENT OF PERMANENT INJUNCTION, CONTEMPT PROCEEDINGS AND ISSUANCE OF FINAL JUDGMENT PENDING A FINAL DECISION OF THE USPTO OF REEXAMINATION AND APPEAL (Doc. No. 310)**
>
> **FILED:** December 15, 2011
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

In this patent infringement controversy, Defendant Environmental Manufacturing Solutions, LLC, ("EMS") moves to stay enforcement of the permanent injunction, contempt proceedings and issuance of a final judgment in this civil case until the United States Patent and Trademark Office ("PTO") makes a final ruling, given that the PTO's non-final office action rejected Claims 1-5 of the patent at issue in the case. For the reasons that follow, the Court finds that a stay is appropriate until the PTO's final ruling and it is respectfully **RECOMMENDED** that the Motion to Stay Enforcement

(Doc. 304) be **GRANTED**. The Hearing scheduled for January 17, 2012 will be postponed by separate order entered contemporaneously with this Report and Recommendation.

*I. Background Facts*

The patent at issue involves the removal of unwanted calcium carbonate, which is often produced and used in industrial processes, but is only slightly soluble in water, causing it to deposit on surfaces and build up in industrial liquids. The disputed patent owned by Peach State Labs, Inc. ("Peach State") relates to a method of using urea hydrochloride to remove unwanted calcium carbonate by converting it to a water soluble salt. EMS filed the present action against Peach State seeking a declaratory judgment that United States Patent No. 5,672,279 ("the '279 patent") – "Method for Using Urea Hydorchloride" – is invalid and not infringed by EMS. Doc. 1 at 9. Along with its Answer, Peach State filed a Counterclaim alleging that the use of EMS Ready Mix, Blow Out, Barracuda, Basic CR, SynTech I, SynTech pH, and Eximo products in accordance with the instructions and applications identified in EMS's product literature infringe the '279 patent. Doc. 29 at 11-12. Peach State additionally alleged that EMS contributed to and/or induced infringement of the '279 patent by others and that EMS's infringement is and has been willful. *ld*. at 12-13.

The parties disputed the proper construction of several terms of the '279 patent, and a pretrial claim construction hearing was conducted in accordance with *Markman v. Westview Instruments. Inc.*, 517 U.S. 370 (1996). Docs. 41-42. Following the hearing, a *Markman* Order was entered construing the contested claims. Doc. 96. The parties then moved for summary judgment on the issues of validity and infringement. Judge Antoon granted Peach State's summary judgment motion, finding that EMS failed to create a genuine issue of material fact relating to the invalidity of the '279 patent under 35 U.S.C. §§ 102, 103, or 112, as well as to the affirmative defense of patent misuse. Doc. 169. On the other hand, Judge Antoon granted EMS's summary judgment motion to the extent it sough a finding

that EMS did not contribute to or induce the infringement of the '279 patent by producing and instructing others to use the EMS Syntech I product. *Id*. at 40. On April 18, 2011, a jury found that EMS willfully infringed claim 1 of the '279 patent and awarded damages to Peach State. Doc. 204.

Following an evidentiary hearing held on July 26, 2011, Judge Antoon determined that EMS engaged in litigation misconduct sufficient to meet the standard for enhanced damages and attorney's fees. Doc. 262. On May 2, 2011, Peach State moved for the entry of a permanent injunction under 35 U.S.C. § 283, which Judge Antoon granted on August 12, 2011 following the July 26, 2011 evidentiary hearing on the matter.

In the meantime, on May 9, 2011, prior to entry of the Permanent Injunction on August 12, 2011 (Doc. 278), Defendant filed an Ex Parte Request for Reexamination of the '279 Patent. On June 29, 2011 the PTO issued a decision granting the request for reexamination, which generally means that the examiner believed a "substantial new question of patentability" exists under 35 U.S.C. §303(a). On December 1, 2011, the PTO issued an "Office Action in *Ex Parte* Reexamination," rejecting all of the claims of the '279 Patent as being unpatentable under 35 U.S.C. §103 (obviousness) over cited prior art references. *See* Doc. 310-1. The PTO non-final office action stated in pertinent part:

*Claim Rejections - 35 USC § 103*

*8.    Claims 1-5 are rejected under 35 U.S.C. § 103(a) as being unpatentable over Gallup, Ludwig, Gulla, Erzsebet, Dill, Feeney and Snyder.*

Claim 1. A method to solubilize calcium carbonate in aqueous suspensions or dispersions of calcium carbonate that includes adding the suspensions or dispersions a sufficient amount of urea hydrochloride to convert the calcium carbonate to a water soluble salt, wherein a molar ratio of urea to hydrochloric acid approximately between 1:4 and 4:1 is used to form urea hydrochloride. At the time of the invention, it was well known that the scale deposits on surfaces can be advantageously removed by a composition containing urea and HCI, as especially described by Erzsebet and Gulla, and generically described by Ludwig and Gallup, as detailed below.

\* \* \*

Conclusion

10. Claims 1-5 are under reexamination.
    Claims 1-5 are rejected.

Doc. 310-1 at 7, 11.

II. *Standard for Stay in Light of PTO Reexamination*

A district court is not required to stay judicial resolution merely because reexamination proceedings have been instituted; rather, the decision is a matter for the district court's discretion. *Alps South, LLC. v The Ohio Willow Wood Co.*, 2010 WL 2465176 (M.D. Fla. June 16, 2010) (citing *Regalo Int'l, LLC v. Dex Products, Inc.*, 2009 WL 2951107, \*1 (D. Minn. Sept.9, 2009)). There is no *per se* rule that patent cases should be stayed pending reexamination because such a rule would invite parties to unilaterally delay and derail litigation. *Id*.

Many courts have concluded that a reexamination proceeding before the Patent Office is likely to significantly impact the issues that must be resolved during litigation. *See, e.g., Baxa Corp. v. ForHealth Techs.*, Case No. 6:06-cv-353-19JGG, 2006WL 4756455, \*5 (M.D. Fla. May 5, 2006) (Fawsett, J.) (granting stay where the PTO was investigating the significance of the same prior art documents that the defendant was likely to use to challenge the validity of the patents-in-suit at trial). As Judge Fawsett has explained when faced with a similar request for stay in light of a reexamination on overlapping issues:

> Congress enacted the [the Patent Office's] reexamination procedure to provide an inexpensive, expedient means of determining patent validity which ... should be deferred to by the courts. The "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the [Patent Office] (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.1983). While early versions of the reexamination statute provided for the stay of court proceedings, those provisions were removed from the final bill because Congress understood "such power already resides with the Court to

> prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." Id. Accordingly, the decision to grant a motion to stay proceedings pending the outcome of a reexamination proceeding rests with the sound discretion of the Court. *Id.* at 1341.

*Id*. at *1 (some citations omitted). In determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *Id*.; *see Freedom Scientific, Inc. v. GW Micro, Inc.*, 2009 WL 2423095, *1 (M.D. Fla. July 29, 2009).

EMS argues that, unless Peach State "is able to convince the PTO to reverse its position, which is unlikely, the PTO will issue a final Office Action finding the claims of '279 Patent are not patentable" and "according to the latest PTO statistics, only 34% of all patents granted *ex parte* reexamination survive unchanged." See Doc. 310-2 (USPTO Report: "Quarterly Ex Parte Reexamination Filing Data, September 30, 2011). In other words, two-thirds of the patents granted ex parte reexamination are modified in some way.

EMS argues that the Examiner's interpretation of claim of the '279 Patent is consistent with its own claim construction submitted in this case, that the solubilizing of the calcium carbonate had to be in the aqueous suspension or dispersion and that the prior art and prosecution history of the '279 Patent precluded Peach State from claiming that its patent covered the removal of calcium carbonate on surfaces. Doc. 310 (citing Docs. 41, 50). Judge Antoon had held that the prosecution history was ambiguous at best and that Peach State did not clearly and unequivocally limit the scope of the ordinary and accustomed meaning of the term "calcium carbonate in aqueous suspensions or dispersions of calcium carbonate" such that the removal of calcium carbonate on surfaces was considered claimed in the '279 Patent. Doc. 310 (citing Docs. 96, 278). EMS further argues that judicial resources will be conserved by staying the case because, upon issuance of a final judgment

in the civil case by the Court, EMS intends to appeal the Final Judgment to the Federal Circuit, and as part of the appeal, EMS will challenge Judge Antoon's interpretation of the claims of the '279 Patent. Peach State also has the right to appeal any adverse final decision by the Board of Patent Appeals to the Federal Circuit, and EMS intends to seek a stay of an appeal of a final judgment to be entered in this case (if necessary) so that any potential appeal filed by Peach State in the Board of Patent Appeals can be consolidated with the appeal from this civil case.

Peach State argues that a stay at this late stage in the litigation would unduly prejudice Peach State, would not simplify any issues or streamline trial, and would increase, not decrease, the burden on the Court and Peach State. Doc. 314. Peach State argues that the parties and the Court have already expended the resources on the trial in the civil case, held from April 11 to 18, 2011, and EMS chose not to file its Ex Parte Request for Reexamination until May 9, 2011, prior to entry of the Permanent Injunction by this Court on August 12, 2011 (Doc. 278). Peach State argues that there is no possible way for the PTO's Reexamination to simplify the issues in this case since the trial has been had and the Court has ruled on post trial motions, and the PTO's actions are merely preliminary.

Peach State relies on two cases in arguing against a stay simply because the reexamination is pending. In *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1327-28 (Fed. Cir. 2001), the Federal Circuit affirmed the district court's denial of the stay where the reexamination was sought after trial. However, *Viskase* is distinguishable from the facts of the instant case because the reexamination there had resulted in the "recent confirmation" of one of the patents at issue in the case. In this case, the PTO has issued a non-final ruling rejecting Claims 1-5 of the patent at issue. The second case on which Peach State relies for the argument that reexamination after trial should not stay the case is *Orion IP, LLC v. Mercedes-Benz USA, LLC*, No 6:05-CV 322, 2008 WL 5378040 (E.D. Tex. Dec. 22, 2008), *rev'd on other grounds*, 605 F.3d 967 (Fed. Cir. 2010) in which the district court

denied the motion to stay judgment pending reexamination where reexamination would not simplify the issues at trial because the case had already been tried to a verdict and judicial economy strongly favored denial of a stay. In that case, although the claims at issue were initially rejected in the re-examination, the trial judge outlined the lengthy process of reexamination that the court believed "could take years" and held that the patent owner's "certain prejudice if the stay is continued pending the re-examination proceeding outweigh[ed] the [challenger's] speculative prejudice if the stay is not continued and the claims are eventually altered." *Id*. at *8. The trial court employed a similarly dim view of the speed with which a final decision would be made in *NTP, Inc. v. Research In Motion, Ltd.* 397 F.Supp.2d 785, 786-787 (E.D. Va. 2005), where the Federal Circuit had denied previous motions to stay and had already issued a mandate to the Court to begin final remand proceedings: "Reality and past experience dictate that *several years might very well pass* from the time when a final office action is issued by the PTO to when the claims are finally and officially "confirmed" after appeals. *Id*. at 787 (citing *In re Am. Acad. of Sci. Tech Ctr*., 367 F.3d 1359 (Fed. Cir. 2004) (PTO's findings were not confirmed until ten years after a reexamination was first requested).

Such lengthy, open-ended delays are not anticipated here, where even Peach State concedes that the median pendency of an *ex parte* reexamination is 19.9 months and the average pendency is 25.6 months from the time of filing, which was May 9, 2011; the reexamination process is nearly halfway through the typical period for the full reexamination, although the Court recognizes that averages include time frames that are outliers. For this reason, the Court recommends the unusual step to address the prejudice argument as raised by Peach State – a supersedeas bond that would cover any prospective judgment amount and any damages in keeping with the requirements of Federal Rule of Appellate Procedure 62(d). Otherwise, if the final judgment is stayed, there is no protection of Peach State's damage award.

Another factor weighing in favor of the stay is that the contempt issues, as narrowed by the parties or as previewed by this Court do not appear to be active, ongoing contempt, if they were indeed contemptuous at the time Peach State filed its Motion. Since the filing of these motions, the parties filed a Joint Status Report (Doc. 315) pursuant to the Court's Notice of Show Cause Hearing (Doc. 309). In the Status Report, the parties represent that, of seven ways outlined in which Peach State believed EMS was in contempt of Judge Antoon's Permanent Injunction (*see* doc. 315 ¶ 10 (A) to (G)), only three remain outstanding issues.[1] The parties have narrowed the issues for the contempt hearing to: whether EMS failed to properly recall the infringing product because of a dispute over the appropriate time period, which products should have been recalled (or were mislabeled), the literature that should have been returned[2]; and whether EMS failed to provide Peach State's attorneys with a list of the EMS Distribution customers who received notice of the injunction. Doc. 315 ¶10(B) and (D). These issues are not ongoing, although they do raise issue of EMS' level of compliance with the Injunction, which can just as easily be addressed after the reexamination is final.

The third issue raised by Peach State – the UH levels in certain product samples[3] – is one on which this Court is skeptical about the veracity of the evidence – alleged samples of Barracuda 10K and Ready Mix Truck Wash provided to Peach State by John Sanders of PowerKleen, Inc. – given the level of bias of this key witness, an acknowledged "fierce competitor" and rival of EMS, who it is undisputed has engaged in other tactics to discredit EMS over the years. *See* Doc. 306 at 15-18.

---

[1] Peach State concedes that EMS is now in compliance for these issues (Doc. 315 ¶ 10 (A), (C), (E), and (F), but contends that EMS' compliance remains an issue to be resolved by the Court. Doc. 315 ¶ 14.

[2] EMS used April 19, 2011 – July 1, 2011 rather than April 1, 2011 – August 12, 2011 as Peach State argues applied; (ii) they provided a statement in bold that the customer's products were not subject to recall; (iii) they did not list Ready Mix Truck Wash (EL) as one of the products to be recalled; and (iv) they did not require that all product literature received before August 12, 2011 be returned or destroyed

[3] Set forth more fully in Doc. 315 ¶10(G).

Looking at the circumstances as a whole, there are countervailing concerns. EMS obviously waited until this litigation was far advanced before seeking action by the PTO. Its argument for a stay is obviously far less compelling than one that comes at the outset of a case. Nonetheless, the division of responsibilities between the courts and the PTO under our patent laws often creates difficulties in timing and in reaching reasonably prompt final decisions. Whether this action is stayed now or may be subject to later proceedings based on the results of the PTO proceedings, the dispute between these parties is not destined for a smooth resolution. However, based on the PTO's non-final office action rejecting *all* of the claims of the '279 Patent, as well as EMS' intention to file an appeal of any final judgment of the district judge, and the narrowing of the contempt issues raised by Peach State to two viable issues (Doc. 315 ¶10(B) and (D)), which do not appear to be ongoing issues, it is respectfully **RECOMMENDED** that the Motion to Stay be **GRANTED**[4].

It is further **RECOMMENDED** that EMS be required to post a bond in an amount that would satisfy any prospective damages judgment (with interest and an allowance for a prospective attorney's fee award) as a condition of obtaining the stay.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 12, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[4] To the extent EMS seeks to have the District Judge enter a final judgment, that issue is left for Judge Antoon to decide.

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy